IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FORTNEY & WEYGANDT, INC., | ) | CASE NO. 1:04 CV 48 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | |
| AMERICAN MANUFACTURERS | ) | **MEMORANDUM OPINION AND** |
| MUTUAL INSURANCE COMPANY, | ) | **ORDER** |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## I. Introduction

Plaintiff Fortney & Weygandt, Inc. has brought suit against American Manufacturers Mutual Insurance Company, American Motorists Insurance Company, and Lumbermens Mutual Casualty Insurance Company to enforce the insurance companies' duty to defend Fortney. Fortney moved the Court for summary judgment,[1] and the insurance companies ("AMICO") have moved for judgment on the pleadings.[2]  Each party argues that there are no genuine issues of material fact, and it should prevail as a matter of law.  The parties have consented to the jurisdiction of the Magistrate Judge.[3]

---

[1] ECF # 30.

[2] ECF # 32.

[3] ECF # 23.

The Court concludes that no genuine issue of material fact exists and that AMICO is entitled to judgment as a matter of law.   Fortney's motion for summary judgment will, therefore, be denied, and AMICO's motion for judgment on the pleadings will be granted.

## II.  Facts

Fortney contracted with Frisch's Restaurants, Inc. to build a Golden Corral Restaurant in North Canton, Ohio.[4]  Fortney's subcontractors, F.J. Shirak, Inc. and J. Goss Concrete, Inc., completed the foundation of the restaurant.  Fortney then oversaw the completion of the walls, roof, and interior of the building.  Soil around the foundation of the building shifted, and the underground utility lines attached to the foundation broke and disconnected from the structure. After an inspection of the foundation, the owner of the restaurant concluded that the foundation system was improperly designed and defectively constructed.[5]   As a result of those deficiencies, the owner had the restaurant demolished and rebuilt.

Frisch's did not pay Fortney for construction of the restaurant.  Fortney filed a demand for arbitration against Frisch's, who then counterclaimed against Fortney.[6]   Frisch's also brought suit in Stark County, Ohio against the architectural firm that designed the first restaurant – Lehmann, Mehler, Hirst, Thornton Associates.[7]   Lehmann answered the complaint

---

[4] ECF # 34, Defendants' Appendix ("DAPP") at 287.

[5] DAPP at 287, 288.

[6] DAPP at 36-38.

[7] DAPP at 39-55.

and included a third party complaint against Fortney.[8]  Fortney, therefore, was a counterclaim defendant in arbitration against Frisch's, and a third party defendant in Frisch's lawsuit against Lehmann in Ohio state court.

In the arbitration counterclaim, Frisch's alleged:

- In the course of construction and after installation of the foundation, the underslab plumbing lines detached and failed local inspection.

- Numerous design and construction deficiencies existed in the restaurant.

- Fortney and its subcontractors poorly constructed the foundation system.

- Fortney failed to exercise good construction practices and did not adhere to the plans and specifications provided by Frisch's.

- Fortney breached its contract with Frisch's by building a restaurant that did not comply with the plans and specifications and by failing to build the foundation system in a workmanlike manner.[9]

In the lawsuit, Lehmann's third party complaint alleged:

- Frisch's complaints are "due solely to work performed by" Fortney.

- Fortney's negligence caused Frisch's damages.

- Fortney's negligence was the sole cause of Frisch's damages, which entitles Lehmann to indemnity.

- Lehmann is entitled to contribution from Fortney under Ohio Revised Code §§ 2307.31 and 2307.32.[10]

---

[8] DAPP at 46-54.

[9] DAPP at 36-38.

[10] *Id.*

By the third party complaint, Lehmann sought to pass on to Fortney the liability alleged in Frisch's complaint.   The complaint repeated the allegation made in the arbitration counterclaim that construction defects surfaced while construction was still in progress.[11] Fortney carried a commercial general liability policy from three separate insurers:  American Manufacturers Mutual Insurance Company, American Motorist Insurance Company, and Lumbermens Mutual Casualty Company.   Fortney notified the insurers (AMICO), through its agent, about both the arbitration counterclaim and the third party complaint.[12]   AMICO refused to (1) defend either the arbitration counterclaim or third party lawsuit, or (2) indemnify Fortney for either claim.[13]

Fortney filed a declaratory judgment action with nine claims in the Cuyahoga Court of Common Pleas.[14]   In this complaint Fortney alleged that Frisch's put it on notice of serious design and construction defects before completion of construction.[15]   Fortney alleged that each carrier had a duty to defend both the arbitration counterclaim and the third party complaint.   AMICO removed the case to the United States District Court for the Northern District of Ohio on the grounds of diversity of citizenship.[16]

---

[11] DAPP at 41.

[12] ECF # 30, Ex. 1 at ¶ 25.

[13] *Id.*

[14] DAPP at 1.

[15] DAPP at 3.

[16] ECF # 1 at 2.

### III.  Analysis

**A.      The legal standard, the errors, and their resolution**

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[17]   The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.[18]

A fact is "material" only if its resolution will affect the outcome of the lawsuit.[19] Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.[20]   The court will view the summary judgment motion "in the light most favorable to the party opposing the motion."[21]   The legal standard for a motion for judgment on the pleadings is largely the same – the moving party must clearly establish that there are no

---

[17] Fed. R. Civ. P. 56(c).

[18] *Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)).

[19] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[20] *Id.* at 252.

[21] *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

material issues of fact remaining to be resolved and, therefore, is entitled to judgment as a matter of law.[22]

At issue in this case is whether AMICO has a duty to defend Fortney on the claims asserted in the arbitration counterclaim and the third party complaint in the state court action. An insurance company has a duty to defend if the operative pleading alleges conduct that arguably or potentially falls within the scope of coverage of the applicable policies.[23]   Where the allegations of those pleadings do not fall within coverage, no duty to defend exists.[24]

The legal standards for summary judgment and judgment on the pleadings are nearly identical.   For the purposes of this opinion, the Court considers the motions to be cross motions.   The parties' cross motions present issues that the Court must reach to decide the pending motions:

- Do the claims against Fortney constitute "property damage" for an "occurrence" thereby triggering the duty to defend?

- Is coverage barred by the j.5 exclusions in the relevant policies?

- Is coverage barred by the policies' j.6 exclusions?

The Court concludes that the arbitration counterclaim and the third party complaint allege "property damage" for an "occurrence" under the policies, triggering coverage.   The undisputed

---

[22] *Beal v. Missouri Pac. R.R.*, 312 U.S. 45 (1941); *Paskvan v. City of Cleveland Civil Serv.*, 946 F.2d 1233, 1234 (6th Cir. 1991).

[23] *City of Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St. 3d 177, 180 (1984).

[24] *Zanco, Inc.  v. Michigan Mut. Ins. Co.*, 11 Ohio St. 3d 114, 116 (1984).

facts establish, however, that coverage is barred under the j.6 exclusions in the policies. AMICO, therefore, is entitled to judgment as a matter of law.

**B.      Both the arbitration counterclaim and the third party complaint allege "Property Damage" for an "Occurrence" under the policies.**

The policies require that, for coverage to trigger, there must be "property damage" caused by an "occurrence," as those terms are defined in the policies.  AMICO argues that Fortney's claim of coverage fails to satisfy this initial condition.[25]

AMICO expends considerable effort attempting to distinguish the Ohio Supreme Court case *Zanco v. Michigan Mutual Insurance*.[26]  However, the law of *Erie Railroad Co. v. Tompkins* remains controlling – when presiding over a case relying upon diversity jurisdiction, this Court must apply the law as pronounced by the highest court in the state.[27]

Zanco was a builder and real estate developer that developed the Pinecrest G condominiums.  After completing the condominiums, Zanco transferred the complex to the owners association.  Zanco then sued some of its suppliers for defective materials that caused property damage to the structure of the complex.  The suppliers brought a counterclaim, and Zanco tendered its defense of the counterclaim to Michigan Mutual.  Michigan Mutual refused to defend Zanco.

---

[25] ECF # 32 at 16.

[26] ECF # 32 at 16-19, distinguishing *Zanco*, 11 Ohio St. 3d at 115-16 (1984).

[27] *Swix v. Daisy Mfg. Co., Inc.*, 373 F.3d 678, 681 (6th Cir. 2004), citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

Zanco sued Michigan Mutual to enforce the insurance company's duty to defend Zanco from the counterclaim.   Michigan Mutual prevailed through summary judgment on different grounds, which the appellate court upheld.  The Ohio Supreme Court wrote:  "Zanco maintains, and the court of appeals agreed, that the counterclaim alleged 'property damage' caused by an 'occurrence' as those terms are defined in the policies."[28]   Although the Ohio Supreme Court went on to decide the case based on different grounds, the Ohio courts have recognized that *Zanco* stands for the proposition that when property damage occurs as a result of the insured's own defective work, the duty to defend may still arise.[29]

Here, the policies require that "property damage" be caused by an "occurrence" to trigger the duty to defend.[30]  Those terms are defined by the policy:

> "Property Damage" means:
> > a.    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it;
>
> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.[31]

_____

[28] *Zanco*, 11 Ohio St. 3d at 115.

[29] *E.g.*, *Acme Const. Co., Inc. v. Cont'l Nat'l Indem. Co.*, No. 81402, 2003 WL 194879 at *2 (Ohio App. 8th Dist. Jan. 30, 2003); *Nat'l Eng'g and Contracting Co. v. United States Fid. & Guar. Co.*, No. 03AP-435, 2004 WL 1103993 at *5 (Ohio App. 10th Dist. May 11, 2004).  *But see*, *e.g.*, *Heile v. Herrmann*, 136 Ohio App. 3d 351, 353-54 (1st Dist. Dec. 17, 1999).

[30] DAPP at 163.    The policy quoted here is one of three policies issued to Fortney. Neither Fortney nor AMICO take issue with any differences in policy language within the crucial sections of each policy.   Therefore, coverage under all three policies will be analyzed under the AMICO policy cited here.

[31] DAPP at 175.

*Zanco* recognizes that, as an initial matter before examining exclusions, deficiencies in construction and design may fall within the broad definitions of "property damage" and "occurrence" as defined in the AMICO policies.

The counterclaim in arbitration and the third party complaint allege "property damage" caused by an "occurrence" as stated in the policies.  The defective construction of the foundation system constitutes property damage.  Further, that damage was caused by an "occurrence" because the damage was unintentional, and possibly the result of continuous exposure to a generally harmful condition – a defective foundation.  Therefore, Frisch's counterclaim and Lehmann's third party complaint triggered the duty to defend Fortney unless an exclusion bars coverage.

**C.      The j.5 exclusions in the policies do not defeat the duty to defend.**

AMICO argues that coverage is barred under section j.5 of the "Damage to Property" exclusions[32] of the policy.[33]

The j.5 exclusion bars coverage for "property damage" to "that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the property damage arises out of those operations." [34]   AMICO argues that the j.5 exclusion bars coverage because the clause "are

---

[32] DAPP at 166.

[33] ECF # 32 at 20.

[34] DAPP at 121, 166, and 214.

-9-

performing operations" in j.5 prohibits coverage if Fortney was still working on the restaurant[35] and cites *Spears v. Smith* [36] in support of their argument.

In *Spears*, Frank and Linda Spears contracted with Smith to build a home. Smith built the "I" beam floor support system personally and subcontracted most of the remaining work. After Smith completed the home, the Spearses noticed "sponginess," depressions, and slanting in the floors. They also noticed that the home's walls and floors separated, wallpaper split, drywall cracked, doorjambs shifted, and the home's cabinets separated from the floor.

Although Spears initially sued Smith and the suppliers of the flooring support system, after Smith declared bankruptcy they amended the complaint to include Smith's insurance carrier. The trial court found that the policy excluded coverage, and Spears appealed.

The court of appeals interpreted the same language at issue between Fortney and AMICO, the j.5 exclusion. The court held the j.5 exclusion was "inapplicable because exclusion j(5) is written in the present tense, barring coverage for the 'particular part' of real property on which the insured is working at the time of the loss."[37] Because Smith completed the project, and the damage occurred after completion, the j.5 exclusion did not bar coverage for the damage to the Spears's home.[38]

---

[35] ECF # 32 at 20.

[36] *Spears v. Smith*, 117 Ohio App. 3d 262 (1996).

[37] *Spears*, 117 Ohio App. 3d at 266 (citations omitted).

[38] *Id*.

The arbitration counterclaim,[39] the complaint in the state case[40] (the basis for the third party complaint), and the complaint in the declaratory judgment action[41] all allege that the property damage occurred while construction was still ongoing but after installation of the foundation system.

Fortney argues that the exclusion should not apply because the foundation was completed when the defects surfaced.[42]  The opinion in the *Spears* case relied on by Fortney appears to support that conclusion.  In *Spears* the owners maintained that faulty work on the flooring limited the exclusion to the flooring system.[43]  Although the trial court rejected that argument, the court of appeals appears to have accepted it.[44]  The court did not decide the case on that basis, however.  Rather, the j.5 exclusion did not apply because "the damage caused by Smith's [the contractor's] defective work arose after Smith completed the project." [45]  Here, of course, the damage at issue arose before Fortney completed its work on the project.

---

[39] DAPP at 37.

[40] DAPP at 41.

[41] DAPP at 3.

[42] ECF # 35 at 4-5.

[43] *Spears*, 117 Ohio App. 3d at 264-66.

[44] *Id.* at 266.

[45] *Id.*

The other Ohio cases cited by the parties do not definitively resolve the issue.  *Erie Insurance Exchange v. Pugh*[46] comes out of the same appellate district as *Spears*.  *Pugh* involved allegations of a basement foundation that failed causing the structure above to collapse.  In *Pugh*, however, the structure collapsed because the contractor undermined the footers of the foundation without properly shoring them.[47]  An employee of the contractor was working on the foundation when the collapse occurred.[48]

In *Owners Insurance Company v. Reyes*[49] the court also upheld a bar to coverage based on a job exclusion.  In that case the complaint alleged that some work was not completed but other work was.  The court ruled that uncompleted work did not come within the policy definition of an occurrence and that work completed was excluded by j.5 and other exclusions.[50]  This holding runs directly contrary to *Spears*.

In this diversity case, in which Ohio law applies, Spears's dicta provides the clearest statement of the interpretation of j.5.  Under that statement, the foundation must be viewed separately from the remainder of the building.[51]  The courts must determine the duty to defend

---

[46] *Erie Ins. Exch. v. Pugh*, No. 98CA53, 1999 WL 812292 (Ohio App. 2d Dist. Oct. 8, 1999).

[47] *Id.* at *2.

[48] *Id.*

[49] *Owners Ins. Co. v. Reyes*, No. OT-99-017, 1999 WL 769561 (Ohio App. 6th Dist. Sep. 30, 1999).

[50] *Id.* at *4.

[51] *Spears*, 117 Ohio App. 3d at 266.

from review of the allegations of the operative pleadings.[52]   Both the arbitration counterclaim and the state court complaint, which serves as the basis for the third party complaint, allege that the damage arose "after the foundation system was installed."[53]   These allegations take the claim outside of the j.5 exclusion for purposes of the duty to defend.

**D.    Exclusion j.6 defeats the duty to defend.**

AMICO argues that exclusion j.6 bars coverage and the duty to defend.   Fortney responds by arguing that the j.6 exclusion does not bar coverage, and, in the alternative, an exception to that exclusion brings the claims alleged back into coverage.

Exclusion j.6 excludes from coverage any property damage to "that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." [54]   AMICO correctly argues that this exclusion, considered in insolation, would bar coverage.

Fortney, as discussed above, is the general contractor – all work on the restaurant is Fortney's work.   The exclusion applies if the property must be restored, repaired or replaced because Fortney's work was incorrectly performed on it.   The arbitration counterclaim and the state court complaint allege that the building was improperly designed and built – the foundation system failed and the building was not designed to specifications.   Those allegations come within the j.6 exclusion.

---

[52] *Zanco*, 11 Ohio St. 3d at 115.

[53] DAPP at 37, 41.

[54] DAPP at 166.

-13-

Exclusion j.6 has an exception – the products-completed operations hazard.  The exception reads: "Paragraph 6) of this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard.' " [55]  Therefore, any damage included in the definition of the "products-completed operations hazard" comes back within coverage.

The " 'products-completed operations hazard' 'includes all property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except: . . . 2) Work that has not yet been completed or abandoned."

The products-completed operations hazard exception will apply – and restore AMICO's duty to defend – if the property damage arises out of Fortney's work and that work has been completed.  Fortney asserts that the work was being put to its intended use by the owner before the damage occurred.[56]  Fortney cites no pleading allegations to support this assertion.[57]  Rather, the operative pleadings allege that the damage was discovered during construction.[58]

The duty to defend must be determined from the allegations in the operative pleadings.[59]  Here those allegations do not support such a duty.  On the facts pled, the j.6 exclusion takes the relevant claims out of coverage, and those claims do not come back within coverage under the products-completed operations hazard exception.

---

[55] *Id.*

[56] ECF # 30 at 16-17; ECF # 35 at 7.

[57] *Id.*

[58] DAPP at 37 and 41.

[59] *Zanco*, 11 Ohio St. 3d at 115.

-14-

## IV.  Conclusion

Based on the foregoing analysis, no genuine issues of material fact exist, and AMICO is entitled to judgment as a matter of law.  AMICO's motion for judgment on the pleadings is hereby granted, and Fortney's motion for summary judgment is denied.

IT IS SO ORDERED.

Dated:  July 5, 2005                                      s/ William H. Baughman, Jr.
                                                         United States Magistrate Judge