UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| FORTNEY & WEYGANDT, INC., | ) | Case No.: 1:04 CV 48 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| AMERICAN MANUFACTURERS | ) | |
| MUTUAL INSURANCE COMPANY, | ) | |
| *et al.,* | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE CINCINNATI INSURANCE | ) | |
| COMPANY, *et al.* | ) | |
| | ) | |
| Third-Party Defendants | ) | <u>ORDER</u> |


Defendants, now acting as Third-Party Plaintiffs, American Manufacturers Mutual Insurance

Company ("AMM"), American Motorists Insurance Company ("AMICO"), and Lumbermens

Mutual Casualty Company ("LMC") (collectively, the "Kemper Group") bring the instant suit

against Third-Party Defendants Cincinnati Insurance Company ("Cincinnati"), Republic Franklin

Insurance Company ("Republic"), and Mark's Trucking and Excavating, Incorporated ("MTE"). The

Kemper Group previously dismissed Third-Party Defendant Auto-Owners Insurance Company

("Auto-Owners"). Currently pending before the court are cross Motions for Summary Judgment

filed by the Kemper Group (ECF No. 189), Cincinnati (ECF No. 185), Republic (ECF No. 187), and

MTE (ECF No. 186); MTE's Motion to Dismiss or, in the Alternative, to Stay Proceedings and

Compel Arbitration (ECF No. 222); and the Kemper Group's Motion for Leave to File Second Amended Third-Party Complaint (ECF No. 223).

For the reasons stated herein, the court grants Third-Party Defendants Cincinnati and Republic's Motions for Summary Judgment and denies the Kemper Group's and MTE's Motions for Summary Judgment.  The court also denies MTE's Motion to Dismiss or, in the Alternative, to Stay Proceedings and Compel Arbitration.  The court grants the Kemper Group's Motion for Leave to file additional claims against MTE.

## I. FACTS AND PROCEDURAL HISTORY

The instant suit arises out of a construction contract between Fortney & Weygandt, Inc. ("Fortney") and Frisch's Restaurants, Inc. ("Frisch's"). Frisch's contracted with Fortney in April of 2001 to construct a Golden Corral restaurant on Dressler Road in North Canton, Ohio (the "Project"). (Joint Stip. Facts ¶ 1, ECF No. 180.) Fortney then hired subcontractors J. Goss Concrete, Inc. ("Goss"), F.J. Schirack, Inc. ("Schirack"), and MTE to perform aspects of the Project. (*Id.* at ¶ 2; First Am. Third-Party Compl. ¶ 28, ECF No. 127.) Construction began in late April of 2001, and by mid-September of 2001 the Golden Corral restaurant was nearly complete. (Joint Stip. Facts Ex. H at 3–4, ECF No. 180-8.) However, several investigations were undertaken when underground plumbing lines failed an air test, and Frisch's eventually decided to demolish rather than repair the deficient building. (*Id.* at 4.) Consequently, Frisch's and Fortney were involved in arbitration proceedings and state law litigation regarding the alleged losses which each suffered from the Project. *See infra* Parts I.C.i–ii.

### A. Insurance Policies Issued Directly to the Parties

AMM and AMICO issued multiple commercial general liability ("CGL") policies to Fortney, providing coverage from July 1, 2000–July 1, 2003.[1] (First Am. Third-Party Compl. ¶¶ 14–16, ECF No. 127.) LMC issued Fortney a commercial catastrophe liability policy for the time period of July 1, 2000 to July 1, 2001. (*Id.* at ¶ 17.)

Cincinnati issued both CGL and commercial umbrella liability policies to subcontractor Schirack for the time period of January 15, 1999–January 15, 2003. (*Id.* at ¶¶ 18–21.) Republic issued a CGL policy to subcontractor Goss with a policy term of August 14, 1999–August 14, 2002. (*Id.* at ¶ 22.) Auto-Owners issued a CGL policy to subcontractor MTE covering the time period of November 2000–November 5, 2001. (*Id.* at ¶ 23.)

### B. Additional Insured Contract Provisions

Each of the contracts Fortney entered into with subcontractors Goss, Schirack, and MTE contained the following requirement: "Prior to commencing construction, Sub is to provide [Fortney] with an insurance certificate naming [Fortney] as additional insured . . ." (*Id.* Exs. J–L, at ¶ 2(f).)

Rather than listing additional insured entities or individuals by name, the policies issued by Cincinnati and Republic to Schirack and Goss, respectively, contained Blanket Additional Insured Endorsements.[2] (App. to Third-Party Pls.' Mot. for Summ. J. Exs. 2–3, ECF Nos. 190-2, 190-3.) The Cincinnati policy included form GA 472 01 95, which provided, in pertinent part:

---

[1] "Nearly every party involved in a construction project will carry a commercial general liability policy." 4 Brunner and O'Connor Constr. Law § 11:40 (2012).

[2] Auto-Owners, previously dismissed, provided evidence that it never included Fortney on the CGL policy held by MTE. (Third-Party Pls.' Mot. for Leave Ex. T, ECF No. 223-21.)

- 3 -

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

1.      SECTION II - WHO IS AN INSURED is amended to include:

2.e.    The person or organization showed in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured, HEREIN REFERRED TO AS ADDITIONAL INSURED.

SCHEDULE

Any person or organization for whom you are required in a written contract, oral agreement or oral contract where there is a certificate of insurance showing that person or organization as an ADDITIONAL INSURED under this policy.

(Ex. 2 at 29, ECF No. 190-2.)

The Republic policy included Form 8-E-3076 Ed. 7-99, which provided, in pertinent part:

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE FORM
. . .
11. ADDITIONAL INSURED - BY CONTRACT, AGREEMENT OR PERMIT . . .

The following is added to SECTION II - WHO IS AN INSURED:

a. Additional Insured - By Contract, Agreement, or Permit

(1) Any person or organization with whom you have entered into a written contract, agreement or permit requiring you to provide insurance such as is afforded by this Commercial General Liability Coverage Form will be an additional insured, but only with respect to liability arising out of your ongoing operations, "your work," or property owned or used by, or rented or leased to you. . . .

(Ex. 3 at 17, ECF No. 190-3.)

- 4 -

### C. Underlying Dispute and Proceedings

<u>1. Underlying Arbitration and Counterclaim</u>

A dispute arose between Fortney and Frisch's in connection with the Project. Consequently, Fortney filed a Demand for Arbitration with the American Arbitration Association against Frisch's on July 25, 2002. (Joint Stip. Facts ¶ 3, ECF No. 180.) Frisch's responded by filing an Answer and Counterclaim for Arbitration ("Counterclaim") against Fortney. (*Id.* at ¶ 4.) Fortney asserted that Frisch's owed Fortney for unpaid invoices that had been issued pursuant to completed work on the Project. (*Id.* at ¶ 5.) Meanwhile, Frisch's counterclaimed that the Project suffered multiple design and construction-related deficiencies. (*Id.* at ¶ 6.) Fortney also filed a third-party claim against its subcontractors Schirack and Goss seeking contribution or indemnification for any damages awarded to Frisch's through arbitration. (*Id.* at ¶ 7.) However, subcontractor MTE was not a party to the arbitration case. (MTE Mot. to Dismiss 2, ECF No. 222.)

Fortney notified the Kemper Group of the Counterclaim filed by Frisch's and demanded the insurers defend and indemnify Fortney with regard to the arbitration claim. (Joint Stip. Facts ¶ 8, ECF No. 180.) The Kemper Group refused to assume Fortney's defense; therefore, Fortney defended itself throughout the arbitration proceedings. (*Id.*) The arbitration case commenced on October 31, 2005, and concluded with closing arguments on June 30, 2006. (*Id.* at ¶ 12.) The arbitration panel issued an "Award of Arbitrators" and a modified award on August 23, 2006 and November 2, 2006, respectively. (*Id.*) The final arbitration award was ultimately confirmed by the Eight District Court of Appeals. (*Id.*) The arbitration panel found Fortney breached its contract with Frisch's and awarded it $388,892 in damages. (Joint Stip. Facts Ex. H at 20, 22, ECF No. 180-8.)

Fortney received no damages from Goss or Schirack (*Id.* at 22–23; Joint Stip. Facts Ex. I at 2, ECF No. 180-9.)

<u>2. State Claim Filed by Frisch's Against its Architects</u>

Frisch's filed a complaint in the Stark County Common Pleas Court on August 29, 2002, against architecture firm Lehmann, Mehler, Hirst, Thornton Associates ("LMHT"). (Joint Stip. Facts  at ¶ 9, ECF No. 180.) LMHT, in turn, filed a third-party complaint against several parties, including Fortney ("LMHT claim"). (*Id.*) As with the Counterclaim in the arbitration case, Fortney notified the Kemper Group of LMHT's claim and demanded the insurers defend and indemnify Fortney. (*Id.* at ¶ 10.) The Kemper Group refused to assume Fortney's defense on the LMHT claim; therefore, Fortney provided its own defense throughout the Stark County lawsuit. (*Id.*) Fortney's motion to dismiss the LMHT claim was granted on February 6, 2003. (*Id.* at ¶ 11.)

**D. Instant Case and Third-Party Claim**

<u>1. Instant Case</u>

Fortney contested the Kemper Group's refusal to provide Fortney with a defense to the arbitration Counterclaim and the LMHT claim by filing a declaratory judgment action against the insurers in the Cuyahoga County Court of Common Pleas on December 11, 2003. (Third-Party Pls.' Mot. for Summ. J. at 4, ECF No. 189-1; Notice of Removal ¶ 1, ECF No. 1.)  Defendants-Third-Party Plaintiffs removed the case to this court on January 1, 2004 under diversity jurisdiction. (*Id.*)

On July 5, 2005, Magistrate Judge William Baughman, acting pursuant to consent jurisdiction, found the Kemper Group had no duty to defend Fortney against Frisch's Counterclaim in the arbitration proceeding or LMHT's third-party claim. (July 5, 2005 Order at 14, ECF No. 42.) On February 12, 2010, the Sixth Circuit reversed, finding the Kemper Group owed Fortney a duty to defend both claims. *Fortney & Weygandt, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 595 F.3d 308, 311 (6th

Cir. 2010). The case was remanded on April 28, 2010. (ECF No. 52.) In November 2010, the Kemper Group paid Fortney for the full cost of defending both the arbitration Counterclaim and the LMHT claim, resulting in the dismissal of all claims between Fortney and the Kemper Group. (Third-Party Pls.' Mot. for Summ. J. at 19, ECF No. 189-1.)

2. Instant Third-Party Claim

Under Count I, the Kemper Group requests that the court declare that: "(1) [MTE] owes a duty to defend and indemnify Fortney and (2) that [the Kemper Group is] subrogated to Fortney's right to defense and indemnification from [MTE] and to any claims of breach of contract for failure to complete the Project in a workmanlike manner." (First Am. Third-Party Compl. ¶ 61, ECF No. 127.) The Kemper Group seeks contribution from Cincinnati (Count II) and Republic (Count III) for defense costs paid to Fortney. (*Id*. at ¶¶ 70, 77.) Claim IV for contribution from MTE's insurer, Auto-Owners, was previously dismissed.

The Kemper Group filed motions for summary judgment against Cincinnati and Republic. The Kemper Group also, after dismissing Auto-Owners, filed a motion for leave to file a second amended third-party complaint with an additional claim against MTE for failure to name Fortney as an additional insured as required by contract. Cincinnati, Republic, and MTE each filed cross motions for summary judgment against the Kemper Group. Thereafter, MTE filed a  Motion to Dismiss or, in the Alternative, to Stay Proceedings and Compel Arbitration.

II. JURISDICTION AND CHOICE OF LAW

Though the claims between Plaintiff and the original Defendants (the Kemper Group), over which the court had diversity jurisdiction have been resolved, the court retains supplemental jurisdiction to hear the remaining claims.

III. LAW AND ANALYSIS

**A. The Kemper Group, Cincinnati, and Republic's Motions for Summary Judgment**

1. Standard

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides that:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. . . .

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*.

If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show "more than a scintilla of evidence to overcome summary judgment;" it is not enough to show that there is slight doubt as to material facts. *Id*. Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

## 2. Analysis

The Kemper Group argues that Cincinnati and Republic must contribute to the defense costs that the Kemper Group already paid on Fortney's behalf because both Cincinnati and Republic owed a duty to defend Fortney, which was triggered by the underlying claims. Cincinnati and Republic counter that they only owed a duty to defend for allegations of vicarious liability stemming from the actions of the subcontractors, but the allegations made against Fortney fall outside the bounds of vicarious liability coverage, thus precluding the Kemper Group's recovery for contribution. Because the court finds the Kemper Group's claim fails on its merits, the insurance provided

coverage for vicarious liability, which does not exist in this case, the court finds it unnecessary to address the other arguments presented by Cincinnati and Repbublic.[3]

The duty to defend arises when the allegations of the complaint against the insured fall within the scope of the insured's insurance policy terms. *Motorists Mut. Ins. Co. v. Trainor*, 294 N.E.2d 874, 875 (Ohio 1973) (citing *Socony-Vacuum Oil Co. v. Continental Cas. Co.*, 59 N.E.2d 199 (Ohio 2945)). Unlike indemnification, the duty to defend is independent of the court's ultimate resolution of the action or to whom liability is attached.[4]  *Id.*  Additionally, "once an insurer must defend one claim within a complaint, it must defend the insured on all the other claims within the complaint, even if they bear no relation to the insurance-policy coverage." *City of Sharonville v. Am. Emp'rs Ins. Co.,* 846 N.E.2d 833, 837 (Ohio 2006) (citing *Preferred Mut. Ins. Co. v. Thompson*, 491 N.E.2d 688, 690 (Ohio 1986)). Finally, Ohio law holds that where the allegations "state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage had been pleaded, the insurer must accept the defense of the claim." *City of Willoughby Hills v. Cincinnati Ins. Co.*, 459 N.E.2d 555, 558 (Ohio 1984).  However, there is no duty to defend an additional insured where the policy is intended to protect the additional insured from vicarious liability for the acts or omissions of the named insured, but the allegations are based on independent acts or omissions of the additional insured.  *See Sprouse v. Kall*, No. 82388, 2004 WL 170451, at ¶¶ 9, 16 (Ohio Ct. App. 2004) Thus, the court

---

[3]     Specifically, the court declines to address whether the Kemper Group's claim is barred by Fortney's failure to (1) file counterclaims in the declaratory judgments or (2) otherwise provide notice to Cincinnati and Republic pursuant to the respective policies, whether Fortney's claim may be brought as a claim for equitable contribution, or whether Fortney has standing to bring the instant claim.

[4]     The court notes that the doctrine of collateral estoppel does not apply to the issue of Fortney's negligence, as asserted by Cincinnati and Republic, because the arbitration panel's finding of Fortney's negligence is irrelevant to whether a duty to defend arose.

conducts the following two-step analysis to decide whether Cincinnati or Republic had a duty to defend: (1) determine the scope of the insurance policy; and (2) assess whether the allegations fall within the scope of that policy.

a. Scope of Fortney's Coverage as an Additional Insured

Cincinnati and Republic argue that the language "arising out of" in the additional insured provisions in their policies limit coverage to vicarious liability claims.  The Kemper Group argues that the phrase "arising out of" does not limit coverage for an additional insured to vicarious liability claims.

Pursuant to Fortney's contracts with Goss and Schirack, Fortney was listed as an additional insured on the Cincinnati and Republic policies. The Cincinnati policy stated that an additional insured is covered, "but only with respect to liability arising out of your [Schirack's] ongoing operations performed for that insured [Fortney]." *See supra* Part I.B. Similarly, the Republic policy stated that an additional insured is covered, "but only with respect to liability arising out of your [Goss's] ongoing operations, "your [Goss's] work," or property owned or used by, or rented or leased to you [Goss]." *Id.*

Under Ohio law, "an insurance policy is a contract whose interpretation is a matter of law." *Cincinnati Ins. Co. v. CPS Holdings Inc.*, 875 N.E.2d 31, 33 (Ohio 2007) (*quoting Sharonville v. Am. Emps. Ins. Co.*, 846 N.E.2d 1256 (Ohio 2006)).  With regard to an additional insured on a general liability policy, Ohio courts consistently interpret the phrase "arising out of," as indicating coverage for vicarious liability only. *Toledo Edison Co. v. ABC Supply Co.*, 46 F. App'x 757, 763–64 (6th Cir. 2002); *see also Cleveland v. Vandra Bros. Constr., Inc.*, 948 N.E.2d 1027 (Ohio Ct. App. 2011); *Boatwright v. Penn-Ohio Logistics*, No. 10 MA 80, 2011 WL 773406, at *4 (Ohio Ct. App. Feb. 25, 2011); *Davis v. LTV Steel Co., Inc.*, 716 N.E.2d 766 (Ohio Ct. App. 1998);

*Currier v. Penn-Ohio Logistics*, 927 N.E.2d 604 (Ohio Ct. App. 2010). Here, the "arising out of" language appears in the additional insured provisions.  Thus, the court finds that Cincinnati and Republic provided coverage for Fortney as an additional insured, but only for claims holding it vicariously liable for the actions of Goss and Schirack.

The cases upon which the Kemper Group relies for support of its position, that the "arising out of" language is not limited to vicarious liability claims, are readily distinguishable. Although the *Stickovitch* court stated that, "[t]he term 'arising out of' in a liability insurance policy affords very broad coverage," the dissent noted that the holding of the case was limited to the narrow issue of waiver.  *Stickovich v. Cleveland*, 757 N.E.2d 50, 69, 74 (Ohio Ct. App. 2001).  In *Stickovitch*, the court found that the insured failed to properly raise the affirmative defense that the coverage for the additional insured violated public policy and therefore it was waived.  *Id*. at 57-58.  The dissent noted that "the majority's discussion [beyond the 'Waiver' section] is *dicta* in its purest form, being wholly unnecessary to the very narrow point of law–the waiver issue–that forms the basis of the majority's resolution of the case."  *Id*. at 74.  Subsequent cases from the Eighth District Court of Appeals have affirmed the narrowness of the *Stickovitch* holding.  *See e.g., Cleveland v. Vanda Bros. Cosntr., Inc.*, 948 N.E.2d 1027, 1031 (Ohio Ct. App. 2011) ("Because the city relies on dicta to support its position that R.C. 2305.31 is inapplicable to political subdivisions [another argument beyond the Waiver section], we find that its reliance on *Stickovitch* is misplaced.");  *Liberty Mut. Ins. Group v. Travelers Prop. Cas.,* No. 80560, 2002 WL 1933244, at *3–4 (Ohio Ct. App. Aug. 22, 2002) ("This court is inclined to agree with [the dissent in *Stickovitch*].  The extraneous discussion of issues outside the narrow point of law–the waiver issue–was wholly unnecessary and had no bearing on reaching the ultimate conclusion.").  Thus, the point in *Stickovitch* regarding the "arising out of" language affording very broad coverage is not persuasive authority. Moreover, in

later cases where the court specifically addressed the scope of additional insured provisions in general liability policies, the Eighth District Court of Appeals found this coverage to only protect the additional insured from vicarious liability. *Vandra Bros.*, 948 N.E.2d at 1032; *see also Sprouse*, 2004 WL 170451 at *2. In addition, the Kemper Group's reliance on *Westfield Ins. Co. v. Hunter*, 948 N.E.2d 931, 937 (Ohio 2011), is also misplaced as this case addressed a homeowner's policy exclusion rather than coverage for an additional insured.

Thus, the court finds that Fortney was covered by the Cincinnati and Republic policies held by Schirack and Goss, respectively; however, the policies only covered Fortney for vicarious liability arising out of Schirack or Goss's work for Fortney.[5]

### b. Allegations in the Complaints

Since the court determined that Cincinnati and Republic only covered Fortney with regard to any vicarious liability it might have for Goss's or Schirack's work, the court now turns to whether the allegations made against Fortney implicate vicarious liability thereby triggering Cincinnati and Republic's duty to defend. Two claims were made against Fortney for which the Kemper Group alleges Republic and Cincinnati had a duty to defend: (1) the arbitration Counterclaim; and (2) the LMHT (architecture firm's) claim in state court. *See supra* Part I.C.i–ii.

Under Ohio law, "[i]t is manifest that vicarious or secondary liability attaches only to the extent that the primary actor is liable." *Currier*, 927 N.E.2d at 609 (citing *Sprouse*, 2004 WL 170451 at *3). As the *Sprouse* court stated, "secondary liability arises when one party is held

---

[5] Because the additional insured provisions do not attempt to cover Fortney for its own negligence and because Ohio courts distinguish additional insured provisions from indemnity provisions in construction contracts, the present additional insured provisions and coverage do not violate R.C. 2305.31 as Cincinnati and Republic assert. *E.g., Buckeye Union Ins. Co. v. Zavarella Bros. Constr. Co.*, 699 N.E.2d 127, 129–30 (Ohio Ct. App. 1997) (citing *Brzeczek v. Standard Oil Co.*, 447 N.E.2d 760 (Ohio Ct. App. 1982)).

responsible based solely on its relationship with the responsible actor." 2004 WL 170451 at *3 (citing *Reynolds v. Physicians Ins. Co. of Ohio*, 623 N.E.2d 30, 31 (Ohio 1993)); *see also Boatwright*, 2011 WL 773406, at *4 (Ohio Ct. App. Feb. 25, 2011). The *Sprouse* court further elaborated, "[s]econdary liability is distinguishable from joint liability, which arises when two or more parties are held liable for action causing injury. When a party commits or participates in an act causing injury, its liability is no longer passive and secondary, but become active and primary." *Id.* Thus, where a complaint alleges active, joint liability rather than passive, vicarious liability, the allegations will not trigger a duty to defend where an insurer covers an individual only for vicarious liability. In *Sprouse*, an employee brought claims of intentional tort and negligence against his employer, the station franchsiee, Kall, and the refining company franchisor, Sunoco. *Id.* at *1. Sprouse later amended his complaint after learning that Sunoco was not his employer. *Id.* Sprouse's first count of his amended complaint omitted any reference to Sunoco and only claimed that he was employed by Kall, but retained language that referred to the defendants in the plural. *Id.* His second count of his amended complaint alleged negligence against Sunoco, stating that Sunoco "or its agents" knew or should have known of the danger caused by a defective piece of equipment, but did not identify the alleged agents. *Id.* The court found that the insurance company had no duty to defend Sunoco on the first count since a vicarious liability claim is "sufficiently complex" and the use of inconsistent pronouns is insufficient to demonstrate that such a claim was alleged. *Id.* at *3. The court found that the insurance company also did not have a duty to defend the second count because the claim was based on Sunoco's independent acts of negligence, and was not based on Kall's conduct, and therefore Sunoco could not claim to be only vicariously liable. *Id.* at *4.

Furthermore, the facts in *Danis Bldg. Constr. Co. v. Emp'rs Fire Ins. Co.*, No. 19264, 2002 WL 31641229, at *5 (Ohio Ct. App. Nov. 22, 2002), a case in which the Ohio court found an allegation for vicarious liability, are readily distinguishable. As *Danis* exemplifies, Ohio courts find that allegations fall within the scope of an additional insured provision only where an entity's liability would not exist but for the act of another. *Id.* at *5. In *Danis*, a general contractor, Danis Building Construction Company, hired subcontractor, Mitre Masonry, to complete part of a construction project. *Id.* at *1. Pursuant to their contract, Mitre added Danis as an additional insured on its liability policy. *Id.* Because Mitre required use of a crane but had neither a crane nor a crane operator, Danis permitted Mitre to use its crane and crane operator, a Danis employee, Dave King. *Id.* at *3. Throughout his work for Mitre, King remained a Danis employee. *Id.*

An accident involving the crane occurred during the course of construction and left Mitre employee Robert Moody injured. *Id.* at *1. At the time of the accident, King was performing his duties as crane operator and was "under the immediate control of [Mitre's] employees." *Id.* at *3. The court found that Danis was entitled to defense under Mitre's liability policy because "the work being performed by Danis' employee with Danis equipment was an essential part of the Mitre Masonry subcontract." *Id.* at *5. Thus, the claim against Danis was one for vicarious liability, which was covered by the additional insured provisions of Mitre's policy, since there were no independent allegations of negligence against Danis.

Here, to support its argument that vicarious liability is alleged in both claims, the Kemper Group cites the following sentence from the arbitration Counterclaim: "Upon investigation, it was determined that Fortney & Weygandt *and its subcontractors* had poorly constructed the entire foundation system." (Third-Party Pls.' Mot. for Summ. J. 13, ECF No. 189-1; Joint Stip. Facts Ex. D, ECF No. 180-4) (emphasis added). This sentence is also incorporated into the LMHT claim as

part of the original state court complaint brought by Frisch's (Ex. G ¶ 1, ECF No. 180-7; Ex. F ¶ 14, ECF No. 180-6.) However, this one sentence not only fails to capture the essence of the claims against Fortney, but also, standing alone, fails to establish an allegation for vicarious liability.

The Counterclaim, filed by Frisch's in the arbitration proceedings, states in more relevant and complete part:

> Upon investigation, it was determined that Fortney & Weygandt and its subcontractors had poorly constructed the entire foundation system. Fortney & Weygandt's construction related deficiencies include, without limitation, construction of a structural slab and grade beam with erratic thickness and improperly placed steel reinforcement; the building is smaller than required by the drawings; underslab utilities were not strapped or affixed to the concrete slab to prevent them from detaching from the structure; the grade beams do not make appropriate contact with driven piles as shown on the construction drawings; the perimeter walls do not correctly align with the grade beam and piles; no perimeter pile caps were installed; the piles were not driven as specified, and other items which show a general failure to adhere to good construction practices and the Project's Plans and Specifications. . . .
> Based on the foregoing, Fortney & Weygandt has breached its contract with Frisch's by failing to provide the structure which complied with plans and specifications, and its failure to build the Golden Corral foundation system in a workmanlike manner.

(Joint Stip. Facts Ex. D, ECF No. 180-4.)  The third-party claim brought by LMHT in Ohio state court states in more relevant and complete part:

> 2. The defects alleged in plaintiff's [Frisch's] complaint were due solely to work performed by Maverick, CBC, and [Fortney].
>
> 3. . . . damages plaintiff sustained, if any, occurred as a result of the negligence and/or actions of third-party defendants Maverick, CBC, and [Fortney].
>
> 4. The alleged injury and damage to plaintiff was due to the sole negligence of Maverick, CBC, and [Fortney] . . .

- 16 -

(Joint Stip. Facts Ex. G, ECF No. 180-7.) The claims against Fortney cannot be described as "potentially or arguably within the policy coverage," which would be sufficient to trigger a duty to defend, because Frisch's and LMHT alleged Fortney's liability based on Fortney's independent negligence. Unlike in *Danis*, Fortney would not be an innocent actor but for the acts of its subcontractors Goss and Schirack. Also unlike *Danis*, the Counterclaim and LMHT claim allege Fortney is independently and *potentially jointly liable* for the damages alleged by Frisch's. As an additional insured, Fortney had coverage from Cincinnati and Republic for allegations that *exclusively* involved vicarious liability. Because the allegations involve independent and possibly joint liability, not vicarious liability, the claims fall clearly outside the scope of Fortney's coverage as an additional insured. *See Sprouse*, 2004 WL 170451 at *4 (stating that additional insured provision limited duty to defend to allegations that would make additional insured liable based upon named insured's conduct, but duty to defend did not extend to any claim based upon the additional insured's independent acts or omissions.) Furthermore, the Eighth District Court of Appeals has taken a very narrow view of the allegations plead, requiring specific allegations of vicarious liability. *See e.g., Vandra*, 948 N.E. 2d at 1032 (in finding the insurer had no duty to defend the court stated that "as an additional insured on the Cincinnati policy, the city is protected in situations where it is secondarily liable for Vandra's acts. The Dawsons do not allege that the city is liable because of Vandra's conduct. Rather, the complaint alleges that the city was independently negligent . . . [and] the Dawsons seek judgment against the city and Vanda jointly and severally."); *Sprouse*, 2004 WL 170451 at *4 (finding no duty to defend because inconsistent pronouns were insufficient to state a claim for vicarious liability and "the negligence claim against Sunoco was not based on Kall's conduct.") The allegations do not indicate that Fortney was *only*

- 17 -

being held liable for the conduct of its subcontractors. Therefore, the court finds that both claims fail to allege vicarious liability so as to trigger a duty to defend for either Cincinnati or Republic.[6]

The court finds that the Counterclaim and LMHT claim did not trigger a duty to defend for either Cincinnati or Republic because (1) the scope of the additional insured provisions covered only vicarious liability; and (2) the claims alleged individual or potentially joint liability, falling clearly outside the bounds of Fortney's additional insured coverage. Because neither Cincinnati nor Republic had a duty to defend Fortney in the arbitration proceeding or state court claims, the Kemper Group's claim for contribution fails. Accordingly, the court grants Cincinnati and Republic's Motions for Summary Judgment and denies the Kemper Group's cross Motion for Summary Judgment.

**B. MTE's Motions**

1. Standards

a. Motion to Dismiss

Where a defendant raises the issue of lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990); *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). The court must be satisfied of its own jurisdiction to hear the claims presented and may address the lack of jurisdiction at any time during the course of an action. *See Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 890 (6th Cir. 1998); *Franzel v. Kerr Mfg. Co.*, 959 F.2d 628, 630 (6th Cir. 1992).

---

[6]     This analysis is borne out by the fact that Fortney was found liable in the arbitration and that ultimately subcontractors, Schirack and Goss, were found not to be liable. Thus, it appears that Fortney is not being held liable for the actions of its subcontractors.

Motions to dismiss for lack of subject matter jurisdiction fall into two categories: facial attacks and factual attacks. *See United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack on subject matter jurisdiction challenges whether the plaintiff has properly alleged a basis for subject matter jurisdiction, and the court must, effectively, resolve the motion under the standard applicable to a Rule 12(b)(6) motion. *See DLX*, 381 F.3d at 516 (stating that "all allegations of the plaintiff must be considered as true"). In a factual challenge to the existence of subject matter jurisdiction, no presumption of truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *Ritchie*, 15 F.3d at 598.

### b. Compelling Arbitration

The Federal Arbitration Act ("FAA") provides that, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may seek an order compelling arbitration from any district court "which, save for such agreement, would have jurisdiction under Title 28 . . . of the subject matter of a suit arising out of the controversy between the parties." 9 U.S.C. § 4. Federal law requires that courts "rigorously enforce agreements to arbitrate." *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (declaring a federal policy favoring arbitration) (internal citation and quotation marks omitted). Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985); *see also Arnold v. Arnold Corp.-Printed Comm'ns for Bus.*, 920 F.2d 1269, 1281 (6th Cir. 1990). The Sixth Circuit applies a four-part test to determine whether to grant motions to stay and compel arbitration:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be non-arbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citation omitted).

### 2. Analysis

In MTE's Motion to Dismiss or, in the Alternative, Stay Proceeding and Compel Arbitration and separate Motion for Summary Judgment, it challenged the Kemper's Group's claim on the basis of the language contained in Fortney's contract with MTE. In its Motion for Summary Judgment, which was filed first, MTE argues that the contractual statute of limitations contained within the subcontractor agreement provides a specific time frame for bringing claims based upon when work was performed, and since that time has passed, Fortney's claims are barred.  (MTE's Mot. for Summ. J. 3–7, ECF No. 186.)  In its Motion to Dismiss/Stay Proceedings and Compel Arbitration, MTE argues that the claims against it should be dismissed as untimely based on the contractual statute of limitations or that they should be stayed in order to submit them to arbitration, as required by the subcontractor agreement. (MTE's Mot. to Dismiss 3–7, ECF No. 222.)  The Kemper Group maintains that the language of MTE's contract with Fortney applies only to claims brought by MTE and not to claims made by Fortney; thus, the Kemper Group asserts that the instant claim is not barred by MTE's contract with Fortney. (Third-Party Pls.' Mem. in Opp'n to MTE's Mot. to Dismiss 3–6, ECF No. 227; Third-Party Pls.' Mem. in Opp'n to MTE's Mot. for Summ. J. 2–5, ECF No. 202.)

- 20 -

Words in contracts are to "be given their ordinary meaning unless manifest absurdity results, or some other meaning is clearly evidenced from the face or overall contents of the instrument." *Kena Props., LLC v. Merchs. Bank & Trust*, 218 F. App'x 402, 405 (6th Cir.2007) (internal citations omitted); *see also GenCorp, Inc. v. American Intern. Underwriters*, 178 F.3d 804, 817–18 (6th Cir. 1999) ("[I]f the meaning of the contract is apparent, the terms of the agreement are to be applied, not interpreted") (internal citation omitted). Furthermore, "Ohio law  instructs courts to 'attempt to reconcile inconsistent contract terms and give effect to each term.'" *Export-Import Bank of U.S. v. Advanced Polymer Sciences, Inc.*, 604 F.3d 242, 248  (6th Cir. 2010) (citing *In re Graham Square, Inc.*, 126 F.3d 823, 830 (6th Cir. 1997)). The Sixth Circuit explained: "[t]he law recognizes that, in certain circumstances, provisions in a contract will seem to contradict. But courts must seek to find a construction that would give effect to each term, and only if such a construction is impossible will the contract be deemed unenforceable." *Id.*; *see also Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672, 685 (6th Cir. 2000) ("[The court's] 'construction of the contract should attempt to harmonize all the provisions rather than produce conflict in them.'") (internal citation omitted).

The parties agree that the Kemper Group, suing in place of its client Fortney, is subject to the provisions established in Fortney's original contract with MTE. (Third-Party Pls.' Br. in Opp'n to MTE Mot. to Dismiss 6, ECF No. 227; MTE Reply Br. in Supp. of its Mot. to Dismiss 3, ECF No. 206.) Therefore, the relevant contract language for the case is found at paragraph twelve of the MTE-Fortney contract:

> A Claim is a demand or assertion by Sub or F&W[7] seeking any remedy under, or enforcement of, or adjustment or interpretation of, this work under, or seeking any money or other relief relating in any

---

[7]     Fortney is referred to as "F&W" within the contract.

> way to the Project or Sub's work on the Project. Any and all Claims by Sub shall be made initially to F&W's project manager in writing within twenty-one days of the event or occurrence giving rise to the Claim. If a satisfactory resolution does not follow, or if forty-five (45) days pass without a response from F&W, the party making the Claim may only pursue the Claim further by serving a demand for arbitration on the other party within twenty-one (21) days of F&W's rejection of the claim, or within sixty-six (66) days of the initial filing of claim if no response is made. . . .

(App. to First Am. Third-Party Pls.' Compl. Ex. L, ECF No. 128-12; *see also* MTE Mot. to Dismiss 4, ECF No. 222.)

MTE cites several portions of the paragraph to support its argument that claims brought by Fortney, and now the Kemper Group, are restricted to the specified time limits and arbitration proceedings. To begin, MTE cites the first sentence, which defines a claim as originating from either Fortney or the Sub, i.e., MTE. (MTE Mot. to Dismiss 4, ECF No. 222.) MTE then argues that the remaining language pertains to a claim brought by either party. (*Id.*) Specifically, it cites the general language used in the third sentence in support of its claim: ". . . *the party making the Claim* may only pursue the Claim further by serving a demand for arbitration on *the other party* within twenty-one (21) days . . ." (*Id.*)

The Kemper Group, on the other hand, cites the second sentence, which states, "Any and all Claims by Sub shall be made initially to F&W's project manager in writing within twenty-one days of the event or occurrence giving rise to the Claim." (Third-Party Pls.' Mem. in Opp'n to MTE's Mot. to Dismiss 4, ECF No. 227.) The Kemper Group also relies on the third sentence's specific references to Fortney's response and Fortney's rejection of the claim. *Id.* In citing to these sentences and phrases, the Kemper Group argues that the language unambiguously provides direction for how subcontractors, i.e., MTE, may file a claim against Fortney, but fails to provide any limits on how Fortney may raise a claim against one of its subcontractors. *Id.*

The court adopts the Kemper Group's interpretation of the contract language because, unlike MTE's reading, it harmonizes all provisions within the paragraph. While it is true that the first sentence defines claims as stemming from either Fortney or its subcontractor, the second sentence explicitly refers to the process by which a subcontractor can bring a claim against Fortney. (*Id.*) This critical second sentence provides the context for the third sentence, which is also cited by MTE. Although the beginning of the third sentence contains language that generally refers to both parties, the end of that same sentence specifically refers to *Fortney's* rejection of the claim. (*Id.*) Thus, the only way to reach the reading proposed by MTE is to ignore the language of the second sentence and at the end of the third sentence, which goes against fundamental contract interpretation rules.

Therefore, the court reads the provision as applying to claims brought by subcontractors, i.e., MTE, but not to claims brought by Fortney. As established in this contract provision, Fortney did not agree that its own claims against a subcontractor would be restricted in time or limited to arbitration proceedings. Thus, the court finds that Fortney did not limit its claims against MTE in time or to arbitration. Consequently, the Kemper Group is also not prevented by the terms of Fortney's contract with MTE and properly brings the instant claim against MTE. Additionally, because the court finds Fortney did not agree to limit its claims to arbitrate, there is no need to analyze MTE's other arguments regarding arbitration. For the same reason, the court does not reach the question of whether MTE waived its right to arbitration. Therefore, the court denies MTE's Motion to Dismiss or, in the Alternative, Stay Proceedings and Compel Arbitration and Motion for Summary Judgment.

### C. The Kemper Group's Motion for Leave to File Second Amended Complaint

<u>1. Standard</u>

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." The Supreme Court has held that in the absence of factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment," leave to amend should be freely granted. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

Where a party seeks leave to amend under Rule 15(a), it "must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir.1995). However, "[d]elay by itself is not sufficient reason to deny a motion to amend." *Robinson v. Mich. Consol. Gas Co., Inc.*, 918 F.2d 579, 591 (6th Cir. 1990) (citing *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989)). Rather, "[n]otice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Id.*; *see also Rosania v. Taco Bell of Am.*, 303 F. Supp.2d 878, 882 (N.D. Ohio 2004). Thus, in denying a motion to amend, a court must find "at least some significant showing of prejudice to the opponent." *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir.1986).

## 2. Analysis

The Kemper Group requests leave to amend its Complaint and bring an additional claim against MTE. (Third-Party Pls.' Mot. for Leave ¶ 2, ECF No. 223.) Initially, in Count IV of its First Amended Complaint, the Kemper Group sought contribution from Auto-Owners as the insurer covering MTE as a named insured and Fortney as an additional insured pursuant to Fortney's contract with MTE. (*Id.* at ¶ 3; *see also* First Am. Third-Party Compl. ¶¶ 79-83, ECF No. 127.) However, during the course of discovery, the Kemper Group learned Fortney was never covered as an additional insured on the Auto-Owners policy held by MTE. (Third-Party Pls.' Mot. for Leave

- 24 -

¶ 4.) Consequently, the Kemper Group dismissed Auto-Owners and now seeks to take action against MTE for failing to name Fortney as an additional insured. (*Id.* at ¶ 5.) The Kemper Group seeks to claim that MTE, by failing to name Fortney as an additional insured, breached the requirement listed in paragraph 2(f) of MTE's contract with Fortney. (Id. at ¶ 5; *Id.* Ex. 1 at ¶¶ 79, 83–87, ECF No. 223-1.)

Rule 15 states that a "motion to amend should be freely granted" so long as the court finds: (1) the requesting party acted with due diligence; and (2) the opposing party had notice such that it would not suffer substantial prejudice. However, as discussed above, a court cannot deny a motion to amend solely because of delay.

### a. Due Diligence

The court finds the Kemper Group acted with the required due diligence as it sought to resolve conflicting information regarding Fortney's status as an additional insured with Auto-Owners. In October of 2010, as part of discovery, Fortney sent the Kemper Group a certificate of insurance indicating that Fortney was an additional insured with Auto-Owners under the policy held by MTE. (Third-Party Pls.' Reply in Supp. of Their Mot. for Leave, Ex. A, ECF No. 228-1.) Based on this information, the Kemper Group filed its First Amended Complaint in March of 2011, in which it claimed Auto-Owners owed contribution for Fortney's defense costs because of Fortney's status as an additional insured. (First Am. Third-Party Compl. ¶¶ 79–83, ECF No. 127.)

However, the Kemper Group first learned the certificate it received from Fortney could be incorrect when Auto-Owners filed its Answer on April 27, 2011, and stated, in part, that its policy did not provide coverage for Fortney as an additional insured. (Auto-Owners Answer ¶ 19, ECF No. 143.) Subsequently, the Kemper Group requested and eventually received a copy of the Auto-Owners policy on June 2, 2011. (Third-Party Pls.' Reply in Supp. of Their Mot. for Leave, Ex. B,

ECF No. 228-2.) On August 19, 2011, the Kemper Group sent an affidavit to Auto-Owners to execute to confirm that the policy with MTE did not provide coverage to Fortney as an additional insured. (Third-Party Pls.' Resp. in Opp'n to Auto-Owners Mot. for Summ. J. ¶ 3, ECF No. 205.) Before returning the affidavit to the Kemper Group, Auto-Owners filed a Motion for Summary Judgment on September 9, 2011, and again denied that the company provided coverage to Fortney as an additional insured. (Auto-Owners Mot. for Summ. J. 2, ECF No. 188.)

The Kemper Group eventually received the executed affidavit from Auto-Owners on January 28, 2012—five months after the Kemper Group sent the affidavit and over ten months after the Kemper Group filed its First Amended Third-Party Complaint. (Third-Party Pls.' Reply in Supp. of Their Mot. for Leave, Ex. C, ECF No. 228-3.) Thereafter, the Kemper Group filed a Motion to Dismiss Auto-Owners on February 22, 2012 (ECF No. 217), which the court granted on March 30, 2012. Upon the court's dismissal of Auto-Owners, the Kemper Group filed its current Motion for Leave to File a Second Amended Complaint (ECF No. 223) on April 13, 2012.

Given the sequence of events, the court finds that the Kemper Group acted with due diligence in its efforts to obtain a copy of the Auto-Owners policy and to confirm via affidavit that the certificate it previously received from Fortney was incorrect. Though there was significant delay between the Kemper Group's First Amended Complaint, filed on March 11, 2011, and its Motion for Leave to File a Second Amended Complaint, filed on April 13, 2012, the court does not find the Kemper Group acted to unnecessarily delay litigation such that its Motion should be denied.

b. Notice and Substantial Prejudice

The Kemper Group named MTE in Count I and Auto-Owner's in Count IV of its First Amended Complaint. (First Am. Third-Party Compl. ¶¶ 61, 83, ECF No. 127.) Because MTE was named in the Complaint, the court finds that MTE should have been on notice that if Auto-Owners

- 26 -

did not have Fortney named as an additional insured as required by the contract between MTE and Fortney, the Kemper Group would likely seek relief from MTE for non-performance of the relevant additional insured contract provision. Moreover, the court notes that the pending motions regarding the Kemper Group's claims against MTE address only contractual time for filing and arbitration arguments. As the parties have  yet to make arguments on the merits of the Kemper Group's claims against MTE, the court finds that MTE will not suffer substantial prejudice if leave is granted.

Therefore, the court finds the Kemper Group acted with due diligence and MTE received sufficient notice such that it will not suffer substantial prejudice. Consequently, despite the thirteen months that passed between the Kemper Group's first amended Complaint and its motion for leave, the court grants the Kemper Group's Motion for Leave to File Second Amended Third-Party Complaint.[8]  However, the court notes that the granting of this Motion does not alter the status or outcome of any of the rulings discussed above on the pending Motions.

## V.  CONCLUSION

For the foregoing reasons, the court grants Third-Party Defendants Cincinnati and Republic's Motions for Summary Judgment (ECF Nos. 185 and 187, respectively) and the Kemper Group's Motion for Leave to File its Second Amended Third-Party Complaint (ECF No. 223). Accordingly, the court denies the Kemper Group's Motion for Summary Judgment (ECF No. 189), MTE's Motion to Dismiss or, in the Alternative, to Stay Proceedings and Compel Arbitration (ECF No. 222), and MTE's Motion for Summary Judgment (ECF No. 186).

---

[8]     Additionally, the court finds that justice would not be served by allowing MTE to benefit from its failure to reveal that it had not obtained coverage for Fortney.

The court hereby sets a telephonic status conference with counsel for the remaining parties on September 14, 2012, at 4:30 p.m.

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

August 30, 2012